**CASE NOS. 25-10816, 25-10829**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

A.G.,

*Appellant*,

v.

NORTHBROOK INDUSTRIES, INC.,

*Appellee.*

G.W.,

*Appellant*,

v.

NORTHBROOK INDUSTRIES, INC.,

*Appellee.*

**ON APPEAL FROM
THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION
CASE NOS. 1:20-cv-05231-JPB, 1:20-cv-05232-JPB**

**CONSOLIDATED BRIEF OF APPELLEE**

Cameron A. Mobley
Alice C. Ward
LEWIS BRISBOIS BISGAARD & SMITH, LLP
600 Peachtree Street NE, Suite 4700
Atlanta, Georgia 30308
Telephone:  (404) 348-8585
Cameron.Mobley@lewisbrisbois.com
Alice.Ward@lewisbrisbois.com

*Counsel for Appellee Northbrook Industries, Inc.*

162248779.1

## <u>CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to FRAP 26.1 and Eleventh Circuit Rule 26.1, the undersigned counsel of record verifies that those persons or entities listed below have or may have an interest in the outcome of this case:

1. A.G. – Appellant

2. Andersen, Tate & Carr, P.C. – Law firm representing Appellant

3. Bouchard, David – Attorney for Appellant

4. Boulee, J.P. – United States District Court Judge

5. Ekpo, Oto – Attorney for Appellant

6. Finch McCranie, LLP – Law firm representing Appellant

7. Fireman's Fund – Insurer for Appellee

8. G.W. – Appellant

9. Galloway, Sara – Attorney for Appellee

10. Knisely, Gabriel – Attorney for Appellant

11. Lewis Brisbois Bisgaard & Smith LLP – Law firm representing Appellee

12. McDonough, Pat – Attorney for Appellant

13. Mobley, Cameron – Attorney for Appellee

14. Northbrook Industries, Inc. – Appellee

15. Tonge, Jon – Attorney for Appellant

16. Ward, Alice – Attorney for Appellee

17. Weeks, Rory – Attorney for Appellant

No other associations of persons, and no other firms, partnerships, or corporations have an interest in the outcome of this case or appeal.

Dated: August 27, 2025

Respectfully submitted,

**LEWIS BRISBOIS BISGAARD & SMITH LLP**

*/s/Cameron A. Mobley*
CAMERON A. MOBLEY
Georgia Bar No. 613048
ALICE C. WARD
Illinois Bar No. 6333523

600 Peachtree Street NE
Suite 4700
Atlanta, Georgia  30308
Telephone:  (404) 348-8585
Facsimile:  (404) 467-8845
Cameron.Mobley@lewisbrisbois.com   *Counsel for Appellee*
Alice.Ward@lewisbrisbois.com   *Northbrook Industries, Inc.*

iii

## STATEMENT REGARDING ORAL ARGUMENT

Appellee agrees that oral argument would assist this Court in deciding these appeals. Appellee maintains that this Court's decision in *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 726 (11th Cir. 2021), plainly precludes Appellants' claims. Nevertheless, Appellee agrees that, given the number of the Trafficking Victims Protection Reauthorization Act ("TVPRA") civil-beneficiary cases currently pending before this Court and district courts within this Circuit, this Court's determination of the issues presented here have potentially far-reaching ramifications. Oral argument would assist this Court in facilitating the just resolution of these parties' dispute and also supply this Court with further context so that it can best provide guidance to TVPRA litigants going forward.

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ...................................................................... ii

STATEMENT OF JURISDICTION ........................................................................1

STATEMENT OF THE ISSUES .............................................................................2

STATEMENT OF THE CASE ................................................................................3

    A.  Course of Proceedings and Disposition Below ............................................3

    B.  Statement of Facts ........................................................................................4

    C.  Standards of Review .....................................................................................8

SUMMARY OF THE ARGUMENT .......................................................................9

ARGUMENT AND CITATIONS OF AUTHORITIES .........................................11

I.   The District Court Properly Found that A.G. and G.W. Failed to Satisfy the "Participation in a Venture" Element of 18 U.S.C. § 1595(a) ...............................11

    A.  United cannot be held liable for Appellants' trafficking under the TVPRA because it did not participate in a venture that violated the TVPRA. ..................12

    B.  This Court in Red Roof correctly held that hotels do not participate in sex trafficking ventures by merely renting rooms to traffickers. .............................17

    C.  United did not participate in any venture with Appellants' traffickers merely by renting rooms to them. .....................................................................................19

    D.  The district court properly viewed the facts in the light most favorable to Appellants when deciding the motion for summary judgment. ...........................22

    E.  The district court properly denied reconsideration of its order granting summary judgment based on Appellants' request – raised for the first time in a reply brief – that the court should have drawn the adverse inference as a sanction at summary judgment. ......................................................................................23

II.  The District Court Properly Dismissed Appellants' Negligence Claims After Finding that A.G. and G.W. Were Only Licensees at United Inn. ..........................25

CONCLUSION .....................................................................................................32

CERTIFICATE OF COMPLIANCE .....................................................................33

CERTIFICATE OF SERVICE ..............................................................................34

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adler v. Wallace Computer Servs., Inc.*,
202 F.R.D. 666 (N.D. Ga. 2001) ..............................................................11, 28

*Alvarez v. Royal Atl. Devs., Inc.*,
610 F.3d 1253 (11th Cir. 2010) ......................................................................8

*Armstrong v. Sundance Entm't*,
179 Ga. App. 635 (1986) ...............................................................................28

*Behforouz v. Vakil*,
281 Ga. App. 603 (2006) ...............................................................................26

*Caldwell v. Warden, FCI Talladega*,
748 F.3d 1090 (11th Cir. 2014) ......................................................................8

*Chudasama v. Mazda Motor Corp.*,
123 F.3d 1353 (11th Cir. 1997) ....................................................................25

*Cordoba v. Dillard's, Inc.*,
419 F.3d 1169 (11th Cir. 2005) ...............................................................10, 23

*Daniels v. Twin Oaks Nursing Home*,
692 F.2d 1321 (11th Cir. 1982) ....................................................................23

*Doe #1 v. Red Roof Inns, Inc.*,
21 F.4th 714 (11th Cir. 2021) ...............................................................*passim*

*Doe 1 v. Apple Inc.*,
96 F.4th 403 (D.C. Cir. 2024)...................................................................21, 22

*Fla. Wildlife Fed'n Inc. v. U.S. Army Corps of Eng'rs*,
859 F.3d 1306 (11th Cir. 2017) ....................................................................29

*Freeman v. Eicholz*,
308 Ga. App. 18 (2011) .................................................................................26

*G.G. v. Salesforce.com, Inc.*,
    76 F.4th 544 (7th Cir. 2023) ........................................................15, 16

*Harris v. Sec'y, U.S. Dep't of the Interior*,
    No. 21-14117, 2022 WL 13711597 (11th Cir. Oct. 24, 2022) ...........................24

*Higginbotham v. Winborn*,
    135 Ga. App. 753 (1975) ........................................................10, 27

*Howell v. Three Rivers Security*,
    216 Ga. App. 890 (1995) ........................................................30

*Jones v. Asa G. Candler, Inc.*,
    22 Ga. App. 717 (1918) ........................................................27

*K.H. v. Riti, Inc.*,
    No. 23-11682, 2024 WL 505063 (11th Cir. Feb. 9, 2024)
    (unpublished)
    ........................................................10, 15, 18, 19

*Lau's Corp. v. Haskins*,
    261 Ga. 491 (1991) ........................................................30

*Raheem v. GDCP Warden*,
    995 F.3d 895 (11th Cir. 2021) ........................................................24

*Ratliff v. McDonald*,
    326 Ga. App. 306 (2014) ........................................................30

*Rice v. Six Flags over Ga.*,
    257 Ga. App. 864 (2002) ........................................................30, 31

*Robinson v. Kroger Co.*,
    268 Ga. 735 (1997) ........................................................29

*Sanderlin v. Seminole Tribe of Florida*,
    243 F.3d 1282 (11th Cir. 2001) ........................................................29

*Tesoriero v. Carnival Corp.*,
    965 F.3d 1170 (11th Cir. 2020) ........................................................8

*Tobar v. United States*,
    696 F. Supp. 2d 1373 (S.D. Ga. 2009) ........................................................26

*Travis v. QuikTrip Corp.*,
    339 Ga. App. 551 (2016) ...................................................................29

*United States v. Brannan*,
    562 F.3d 1300 (11th Cir. 2009) .......................................................24

*United States v. Futrell*,
    209 F.3d 1286 (11th Cir. 2000) .......................................................19

*United States v. Stone*,
    139 F.3d 822 (11th Cir. 1998) .........................................................24

*Ware v. Jackson*,
    357 Ga. App. 470 (2020) .................................................................26

## Statutes

18 U.S.C. § 1591(a) ............................................................................11

O.C.G.A. §§ 16-6-9 and 16-5-46 .......................................................27

O.C.G.A. § 51-3-1.........................................................................10, 26

O.C.G.A. §§ 51-3-2(b), 51-3-3(b)......................................................26

Trafficking Victims Protection Reauthorization Act, 18 U.S.C. §
    1595(a) ...................................................................................*passim*

TVPRA.............................................................................................*passim*

## Other Authorities

Fed. R. Civ. P. 26(g) ..........................................................................25

Fed. R. Civ. P. 56(a).............................................................................8

## **STATEMENT OF JURISDICTION**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1291 and

Rule 4 of the Federal Rules of Appellate Procedure.

## STATEMENT OF THE ISSUES

I.    **Whether the District Court Properly Found that Appellants Failed to Satisfy the "Participating in a Venture" Element of 18 U.S.C. § 1595(a).**

II.   **Whether the District Court Properly Dismissed Appellants' Negligence Claims After Finding that A.G. and G.W. Were Only Licensees at United Inn.**

## STATEMENT OF THE CASE

### A.    *Course of Proceedings and Disposition Below*

In December 2020, Appellants G.W. and A.G. filed similar suits against Appellee Northbrook Industries, Inc. d/b/a United Inn & Suites ("United"), asserting claims for: (1) alleged violations of the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595(a); and (2) negligence. (G.W. Doc. 1 at ¶¶ 2, 71-81, 82-109; A.G. Doc. 1).[1] Appellants' Complaints were premised upon alleged violations at the United Inn and Suites located at 4649 Memorial Drive, Decatur, Georgia (the "Property").

In February 2021, United moved to dismiss Appellants' Complaints for failure to state a viable claim, which motions the district court denied in May 2022. (G.W. Docs. 16, 40; A.G. Docs. 13, 39).

In December 2023, Appellants moved for sanctions related to a discovery dispute, and United moved for summary judgment. (G.W. Docs. 114, 116; A.G. Docs. 116, 118). In June 2024, the district court granted United's summary judgment motion, dismissing all of Appellants' claims. (G.W. Doc. 148; A.G. Doc. 151).

---

[1] Citations are in the form of G.W. Doc. __ at __; A.G. Doc. __. Page numbers refer to the CM/ECF pagination. Because this is a consolidated appeal brief, citations are provided to the docket entries in A.G.'s and G.W.'s respective cases. When the page numbers for the filings in the respective cases are identical, they are only provided for the first filing cited (*i.e.*, G.W.'s filing).

In July 2024, G.W. and A.G. moved for reconsideration of the summary judgment order. Following briefing and oral argument, the district court denied reconsideration. (G.W. Doc. 161; A.G. Doc. 164). The district court granted Appellants' motions for sanctions and awarded monetary sanctions. (G.W. Doc. 161; A.G. Doc. 164).

### B.    Statement of Facts

G.W. alleged that she was trafficked by Zaccheus Obie ("Mr. Obie") between June 22, 2017, and July 23, 2017. (G.W. Doc. 117-2 at 34-35). G.W. was 17 years old during the time of alleged trafficking. (*Id.* at 14).

A.G. alleges that she was trafficked by Mr. Obie between June 22, 2017, and July 26, 2017. (A.G. Doc. 119-1 at 47, 85-86). A.G. was 17 years old during the time of alleged trafficking. (*Id.* at 14).

G.W. and A.G. were friends and were put in contact with Mr. Obie through Quintavious Obie, Mr. Obie's cousin. (G.W. Doc. 117-2 at 28-29). G.W. and A.G. thought Mr. Obie would get them into clubs to dance for money and did not know they would be performing commercial sex acts. (G.W. Doc. 117-2 at 31-33; A.G. Doc. 119-1 at 36-39).

After exchanging text messages with Mr. Obie, G.W. and A.G. agreed to be picked up in Commerce, Georgia and taken to Atlanta to work for Mr. Obie. (G.W. Doc. 117-2 at 33-34; A.G. Doc. 119-1 at 44-45). On the night of June 23, 2017, G.W.

and A.G. were taken to a Red Roof Inn on Fulton Industrial Boulevard in Atlanta, Georgia, and they both performed commercial sex acts at Mr. Obie's direction, although he was not present. (G.W. Doc. 117-2 at 38; A.G. Doc. 119-1 at 45-50). At the time, G.W. felt that she could physically leave the arrangement with Mr. Obie whenever she wanted to. (G.W. Doc. 117-2 at 71-72).

Mr. Obie later directed G.W. and A.G. to solicit buyers of commercial sex acts in the area surrounding the Property and perform commercial sex acts in guest rooms he rented at the Property. (G.W. Doc. 117-2 at 78-81; A.G. Doc. 119-1 at 48-49). On June 23, 2017, Mr. Obie and his associate Dontavious Carr paid for and checked into Room 112 at the Property while G.W. and A.G. waited outside in Mr. Obie's car. (G.W. Doc. 117-2 at 75-79; A.G. Doc. 119-2 at 55-57). G.W. and A.G. then used that room to perform commercial sex acts. (*Id.* at 77). At no point during their alleged trafficking did G.W. or A.G. ever check themselves into any hotel room. (G.W. Doc. 117-2 at 41; A.G. Doc. 119-1 at 58-65, 71-80, 85-86). G.W. and A.G. found men to engage in commercial sex acts with by walking the streets and through online websites. (G.W. Doc. 117-2 at 56-57; A.G. Doc. 119-1 at 59-63). Mr. Obie collected the money G.W. and A.G. earned after they performed commercial sex acts. (G.W. Doc. 117-2 at 73; A.G. Doc. 119-1 at 88).

During their alleged trafficking at the Property, G.W. and A.G. only walked into the lobby to buy snacks or condoms; they did not engage in any conversation

5

with staff while making these purchases. (G.W. Doc. 117-2 at 125-26; A.G. Doc. 119-1 at 125-29). They also never informed any of United's staff that they were being forced to perform commercial sex acts. (G.W. Doc. 117-2 at 121, 125-26, 172-73; A.G. Doc. 119-1 at 125-29).

On June 26, 2017, G.W. and A.G. left the Property and went back home to family in Commerce, Georgia. (G.W. Doc. 117-2 at 97-98; A.G. Doc. 119-1 at 99). On July 2, 2017, G.W. chose to leave home again and go back to the Property to continue working for Mr. Obie. (G.W. Doc. 117-2 at 113-115). A.G. chose not to go back and did not work with Mr. Obie again. (A.G. Doc. 119-1 at 104-14).

G.W. stayed a second time at the Property on July 2, 2017. (G.W. Doc. 117-2 at 46, 115). On her second visit to the Property, G.W. shared a room on the second floor with two other women working for Mr. Obie. (*Id.* at 118-19). G.W. stayed in this room until July 3, 2017, before being moved to a different hotel. (*Id.* at 119, 124). Subsequently, G.W. stayed at and engaged in commercial sex acts at approximately nine other establishments. (*Id.* at 128-39). On July 17, 2017, G.W. went back home to Commerce, Georgia. (*Id.* at 140).

On July 20, 2017, G.W. returned to the Property where Mr. Obie's associate, Kikia Anderson, rented room 222 and instructed G.W. to stay there. (*Id.* at 144). On July 21, 2017, G.W. left the Property and visited an unknown hotel off Old Dixie Highway in Jonesboro for the night of the July 21, 2017, before visiting the

6

American Inn on Tara Boulevard in Jonesboro for the night of July 22, 2017, to engage in commercial sex acts. (*Id.* at 149-150, 153). On July 23, 2017, G.W. alleges she was raped and robbed by a potential client while at the American Inn in Jonesboro. (*Id.* at 154-55). G.W. did not call the police. (*Id.*). On July 23, 2017, Mr. Obie was arrested, and G.W. was taken to the police department. (*Id.*).

The Property is an exterior access hotel: guests and visitors are able to come and go from guest rooms as they please without walking into the lobby of the hotel. (*Id.* at 171; G.W. Doc. 117-3 at 88-89, 94-95). The Property's lobby was open from 6 a.m. to 9 p.m. and, from 9 p.m. to 6 a.m., only the window was open for check-in or purchases. (G.W. Doc. 117-3 at 33).

Mr. Tahir Shareef operates and owns an 81 percent stake in the Property. (*Id.* at 22-24). Ashar Islam was the general manager of the Property from 2017 through 2019 and reported directly to Shareef. (G.W. Doc. 117-5 at 13-14). Mr. Shareef had a security guard patrol the property from 10 p.m. to 2 a.m. each night on the property in 2017 through 2019. (G.W. Doc. 117-3 at 92). Mr. Shareef also spoke with staff about looking out for criminal activities, including commercial sex activities. (*Id.* at 188). If Mr. Shareef thought something suspicious was going on with a person on property, Mr. Shareef would call the police to remove the person and encouraged other employees to do the same. (*Id.* at 192-93).

Mr. Shareef, who resided at the Property most of the year, never noticed any prostitution at the Property at the time A.G. and G.W. allegedly were trafficked. (*Id.* at 26-27, 64). Mr. Shareef was not aware of potential human trafficking of minors until August 2017, after the arrest of Mr. Obie. (G.W. Doc. 117-4 at 297-300). Similarly, Mr. Islam did not recognize or recall ever seeing G.W. or A.G. at the Property. (G.W. Doc. 117-5 at 105).

### C.    *Standards of Review*

This Court reviews a district court's grant of summary judgment *de novo*, applying the same legal standards as the district court. *See Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1263 (11th Cir. 2010). Summary judgment is appropriate if the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, this Court must "view all the evidence and draw all reasonable inferences in the light most favorable to the non-moving party." *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014). This Court may affirm the district court's judgment for any reason supported by the record, even if the lower court did not rely upon the same reasoning. *See Tesoriero v. Carnival Corp.,* 965 F.3d 1170, 1177 (11th Cir. 2020).

## SUMMARY OF THE ARGUMENT

Appellants contend on appeal that the district court erred by granting summary judgment to United because it improperly found that Appellants failed to satisfy the "participation in a venture" element of their beneficiary liability claim under the TVPRA; erred in its application of the applicable standard; and erred by finding as a matter of law that Appellants were licensees at the Property. Appellants' arguments are without merit.

The district court properly rejected Appellants' argument that by merely renting rooms to Appellants' sex traffickers, United participated in a venture with the traffickers that United knew or should have known violated the TVPRA. As this Court held in *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 725 (11th Cir. 2021) ("*Red Roof*"), "participation in a venture" under 18 U.S.C. § 1595(a) requires that a defendant "took part in a common undertaking or enterprise involving risk and potential profit." In this context, such participation must be "in a venture which . . . engaged in an act in violation of [the TVPRA]." 18 U.S.C. § 1595 (a). Thus, to establish beneficiary liability against a hotel operator, Appellants in this case must demonstrate that the operator "took part in a common undertaking or enterprise" that engaged in sex trafficking. *Red Roof*, 21 F.4th at 725. This Court has already established that renting hotel rooms to sex traffickers does not amount to

participating in sex trafficking. *Id.* at 727; *see also, K.H. v. Riti, Inc.*, No. 23-11682, 2024 WL 505063, at \*4 (11th Cir. Feb. 9, 2024) (unpublished).

Contrary to Appellants' contention, the district court applied the proper summary judgment standard, and it did not fail to make all required inferences in their favor. The court properly rejected Appellants' argument that certain facts support the inference that United was engaged in a common undertaking with the sex traffickers because to do so would have constituted conjecture and speculation, which do not create a genuine issue of material fact. *See Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005). Further, because it was raised for the first time in their reply brief in support of their motion for reconsideration, the court properly rejected Appellants' argument that the court should have drawn an adverse inference against United based on discovery abuses.

Finally, the district court properly concluded that Appellants were licensees at United because they were not there for a proper purpose (but instead to engage in illegal commercial sex acts), they were not induced or led to the Property by United, and their presence presented no benefit to United. *See* O.C.G.A. § 51-3-1; *Higginbotham v. Winborn*, 135 Ga. App. 753, 755 (1975). And because their status for purposes of establishing the duty of care is determined at the time of their injuries, the fact that Appellants made convenience store purchases in the hotel lobby does not change the result. Furthermore, by raising it for the first time on

10

reconsideration, Appellants also waived their argument that even if they were licensees, United still owed them a duty of care. *See Adler v. Wallace Computer Servs., Inc.*, 202 F.R.D. 666, 675 (N.D. Ga. 2001).

## ARGUMENT AND CITATIONS OF AUTHORITIES

### I.   The District Court Properly Found that A.G. and G.W. Failed to Satisfy the "Participation in a Venture" Element of 18 U.S.C. § 1595(a).

Section 1591(a) of the TVPRA criminalizes the sex trafficking of, or knowingly assisting, supporting, or facilitating the sex trafficking of, children or adults by force, fraud, or coercion. 18 U.S.C. § 1591(a). A sex-trafficking victim may bring a civil action against a party under the "beneficiary liability" provision of 18 U.S.C. § 1595(a).

To establish beneficiary liability under the TVPRA, Appellants were required to produce evidence that United:

> (1) knowingly benefited, (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) that undertaking or enterprise violated the TVPRA as to [Appellants], and (4) [United] had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to [Appellants].

*Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 726 (11th Cir. 2021).

Appellants claim that by merely renting rooms to Appellants' sex traffickers, United participated in a venture with those sex traffickers that United knew or should have known violated the TVPRA. The district court properly rejected Appellants'

11

arguments below because their claims ignore the statutory text and this Court's analysis of beneficiary liability in *Red Roof*.

> **A.** *United cannot be held liable for Appellants' trafficking under the TVPRA because it did not participate in a venture that violated the TVPRA.*

Appellants argue that any hotel operator who rents a room to a sex trafficker has then participated in a venture with that sex trafficker as contemplated by the TVPRA. They claim that the 2008 amendment to the TVPRA was intended to impose civil liability against "whoever benefits" from sex trafficking and that hotel operators fall into this category by receiving room rental fees from traffickers. In other words, according to Appellants, any plaintiff seeking to impose beneficiary liability against a hotel operator would satisfy the participation element simply by demonstrating the hotel operator rented a room to her sex trafficker. That argument conflicts with this Court's analysis in *Red Roof*.

Appellants readily acknowledge that this Court in *Red Roof* decided "participation in a venture" under § 1595(a) requires that a defendant "took part in a common undertaking or enterprise involving risk and potential profit." *Id.* at 725. Nevertheless, Appellants argue that "the common undertaking or enterprise" element does not require evidence of participation in the sex trafficking itself. Consequently, Appellants argue that the participation element is automatically satisfied against every hotel in America simply because they are engaged in a hotel

venture. This argument is absurd on its face. Appellants' oversimplification of the statutory language not only ignores the explicit text but also disregards this Circuit's binding interpretation of the TVPRA.

Appellants argue that because the statute says "participation in a venture" and not "participation in a *sex trafficking* venture" TVPRA plaintiffs are not required to prove that a hotel operator participated in their sex trafficking at all to establish beneficiary liability. In making this argument, however, Appellants have simply excised the remainder of the statutory language to suit their needs. To establish beneficiary liability, the statute explicitly requires that the defendant benefit from "participation in a venture which . . . engaged in an act in violation of [the TVPRA]." 18 U.S.C. § 1595(a). Clearly, the statutory language does not authorize recovery against a defendant simply because they participated in some venture wholly unrelated to the plaintiff's trafficking. Instead, the statute specifically identifies the relevant venture as one that has violated the TVPRA. In this context, of course, the violation of the TVPRA would be sex trafficking. Therefore, to establish beneficiary liability against United, it was Appellants' burden to establish that United "took part in a common undertaking or enterprise" that engaged in sex trafficking. *See Red Roof*, 21 F.4th at 725. It goes without saying that simply operating a hotel does not necessarily involve sex trafficking. Accordingly, the district court correctly concluded that Appellants could not satisfy the participation element by merely

13

demonstrating that United was engaged in a hotel venture. And as discussed more fully in the subsections to follow, the district court was also correct in ultimately determining that Appellants failed to demonstrate United participated in the venture that perpetuated Appellants' trafficking.

In arguing otherwise, Appellants rely on *Red Roof* for the proposition that the venture at issue need not be a "sex trafficking venture" to establish liability. This distinction is immaterial. While it may be true that the relevant venture need not be exclusively or primarily engaged in sex trafficking, the statutory language explicitly and specifically requires that the venture violate the TVPRA. In other words, regardless of the relevant venture's primary objective, it must have engaged in a TVPRA violation (here, sex trafficking) for participation in it to expose a defendant to beneficiary liability.

Here, Appellants failed to demonstrate that United's hotel venture itself engaged in sex trafficking. As such, United's participation in the hotel venture alone cannot satisfy the participation element of Appellants' beneficiary liability claim. The only venture Appellants identified as having engaged in a TVPRA violation is their sex traffickers' venture. However, Appellants failed to produce any evidence that United participated in that venture in any way. *See id.* at 727 ("[T]hey d[id] nothing to show that [United] participated in a common undertaking involving risk or profit that violated the TVPRA — *i.e*., the alleged sex trafficking ventures."); *see*

14

*also K.H. v. Riti, Inc.*, No. 23-11682, 2024 WL 505063, at *4 (11th Cir. Feb. 9, 2024) (unpublished) (holding that allegations that a hotel franchisee "financially benefitted from renting hotel rooms to [the plaintiff's] trafficker and . . . observed signs of sex trafficking at the hotel" did not establish that the franchisee "participated in a sex trafficking venture"). This is precisely why the district court granted United summary judgment on this issue.

Additionally, Appellants' reliance on *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 554 (7th Cir. 2023) — out-of-circuit authority that is persuasive only — for the proposition that the alleged venture need not be a *sex trafficking* venture is misguided. While the Seventh Circuit did hold that a venture can involve a commercial purpose with another entity, like "running or expanding a business," and a defendant can take actions to fulfill that venture's shared purpose, *G.G.* does not support Appellants' position. *G.G.*, 76 F.4th at 554. In *G.G.*, the plaintiff alleged that Salesforce delivered personalized tools to "facilitate[] the growth" of Backpage, a business that allegedly trafficked her and others. *Id.* at 549, 560. Importantly, *G.G.* alleged that Salesforce provided Backpage with "targeted solutions addressed to the needs of [its] business," assessed its "operational needs," and provided "active, ongoing support" "tailored" to those needs. *Id.* at 560. On these allegations, the Seventh Circuit held that although Salesforce did not directly participate in Backpage's sex trafficking, it took part in a "commercial venture[] with Backpage

15

to grow its business." *Id.* at 562. It further held that this commercial venture "engaged in an act in violation of [the TVPRA]" because Backpage's business "engaged in uncounted acts in violation of Section 1591." *Id.* at 564.

In sum, the Seventh Circuit only allowed G.G.'s claims to proceed against Salesforce on the findings that she plausibly alleged (1) Salesforce participated in a venture with Backpage, and (2) Backpage engaged in violations of the TVPRA. *Id.* To be sure, the Seventh Circuit's interpretation of the TVPRA still requires the plaintiff to demonstrate that a defendant participated in a venture that actually violated the TVPRA. Moreover, Appellants' arguments fail to recognize the basis for the Seventh Circuit's determination that Salesforce participated in a venture with Backpage. Salesforce was only deemed to have participated in a venture with Backpage because it made numerous efforts to provide Backpage with specialized services above and beyond its off-the-shelf offerings to other customers. *Id.* at 560. In other words, G.G. plausibly alleged that Salesforce's provision of goods and services to Backpage so far exceeded the bounds of an arms-length commercial transaction that it constituted a separate commercial venture common to both parties. Therefore, even if this Court were to apply the Seventh Circuit's rationale to the present case it would not support reversal of the district court's grant of summary judgment. In the hotel context generally, the "off-the-shelf" services include (at the very least) access to a hotel room, access to common areas, housekeeping related

16

services, and accommodation of guest customer service needs. The record evidence demonstrates that United provided Appellants and their traffickers with nothing more than the "off-the-shelf" services expected of all hotels. Appellants failed to produce any evidence that United provided their traffickers with any specialized or tailored services above and beyond what it provided to all guests. As such, the district court correctly concluded that Appellants failed to demonstrate that United participated in a venture with their traffickers.

**B.      *This Court in* Red Roof *correctly held that hotels do not participate in sex trafficking ventures by merely renting rooms to traffickers.***

In *Red Roof*, this Court explained that "[t]he ordinary meaning of 'venture' is an undertaking or enterprise involving risk and potential profit." *Red Roof*, 21 F.4th at 724. It further explained that '[t]he ordinary meaning of participate or participation is to take part in or share with others in common or in an association." *Id.* at 725. Accordingly, "[p]articipation in a venture," means to "[take] part in a common undertaking or enterprise involving risk and potential profit." *Id.*

After settling on this interpretation, this Court rejected the argument that hotel franchisors participate in "sex trafficking ventures" by renting rooms to individuals whom they should have known were engaged in trafficking. *Id.* at 726-27. Neither their "financial[] benefit[] from renting hotel rooms" nor their alleged "observ[ation]" of sex trafficking demonstrated that the franchisors "took part in the common undertaking of sex trafficking." *Id.* at 727 ("[O]bserving [sex trafficking]

is not the same as participating in it."). Simply put, this Court has already correctly determined that merely renting hotel rooms to sex traffickers does not amount to participating in a sex trafficking. And while *Red Roof* evaluated allegations against hotel franchisors, the same rationale applies to hotel operators such as United.

In *K.H.*, this Court concluded that hotel operators who directly rented rooms to sex traffickers did not participate in a sex trafficking venture with them. *K.H*, 2024 WL 505063, at *4. Despite K.H.'s allegations that the defendant hotel operator rented rooms to her traffickers over the course of four years with constructive knowledge of trafficking at the hotel, this Court held that such allegations failed to plausibly allege that the operator "took part in a common undertaking or enterprise with [the traffickers]." *Id.* at *3. Relying on *Red Roof*, this Court confirmed that "allegations of financial benefit alone are not sufficient to establish that the defendant participated in a sex trafficking venture and observing signs of sex trafficking 'is not the same as participating in it.'" *Id.* at *2, *4 (quoting *Red Roof*, 21 F.4th at 726). It further explained that the *Red Roof* defendants' franchisor status was immaterial to its application to cases involving hotel operators such as *K.H.* "The difference between physically renting the rooms (based on the facts of this case) and 'controll[ing] the operation of' renting the rooms (based on the facts of *Red Roof*) is immaterial." *Id.* at *3. Renting rooms to traffickers simply does not establish participation in a common undertaking.

Thus, this Court has already rejected Appellants' theory of liability and made clear that merely collecting rental fees from Appellants' traffickers is insufficient to establish that United participated in a common venture with the traffickers. Although *K.H.* is an unpublished opinion, it is still persuasive authority, particularly because it represents this Court's most recent evaluation of the TVPRA and is based on a straightforward application of *Red Roof*. *See United States v. Futrell*, 209 F.3d 1286, 1289 (11th Cir. 2000) ("Although an unpublished opinion is not binding on this court, it is persuasive authority." (citing 11th Cir. R. 36-2)).

### C. *United did not participate in any venture with Appellants' traffickers merely by renting rooms to them.*

Renting a hotel room to a guest is an arms-length commercial transaction, not a common undertaking involving risk and potential profit. Appellants argue otherwise, claiming that United and their traffickers shared a common undertaking or enterprise because they exchanged money for rooms and goods. Br. at 30. They further claim that "[e]ach side benefited from the bargain — United Inn made money, and the traffickers obtained rooms to sell children for sex and a place to buy goods." *Id.* They also argue that this alleged venture involved the risks that the rooms might be damaged or used for child sex trafficking. *See id.* This argument misapprehends the nature of a common venture. In reality, United's hotel operations and the traffickers' criminal scheme are two distinct ventures that only briefly intersected when the traffickers targeted and exploited United's legitimate business

19

to perpetuate their perverse scheme. But the lack of commonality between these two ventures is obvious when considering the following: United had no interest in the viability of the sex trafficking venture, and the sex traffickers had no interest in the viability of United's hotel venture.

Appellants' attempt to shroud this argument in the language of this Court's venture definition (*i.e.*, discussing it in terms of "risk" and "profit") is unavailing. They identify the risk of damaged rooms and the potential profit derived from room rental fees as an exchange sufficient to establish a common venture. Br. at 30. But the identified risks and profits are not *common* to the counterparties involved in this transaction. Appellants' traffickers had no ownership or financial interest in United's hotel. Therefore, United alone accepted any and all risks associated with potential damage to rooms. The traffickers did not shoulder any of that risk. Similarly, it was United alone who stood to profit from room rental fees. Moreover, Appellants' traffickers engaged rooms at multiple other hotels, thereby passing the risks associated with, as well as the profits from, room rentals on to any hotel operator that would rent a room to them.

On the other hand, Appellants cannot point to any evidence that United ever shared in profits obtained from their trafficking. Importantly, the only money United received from the traffickers was in the form of room rental fees. Appellants presented no evidence that their traffickers ever paid United any additional funds

beyond what was required to rent rooms. Therefore — even assuming that the traffickers paid for room rentals with money gained through sex trafficking — that money could not be considered "profit." By definition, room rental fee payments intended to secure a venue for continued trafficking would be operational costs for the sex trafficking venture. Profit would only be those sums that remained after covering such operational costs.[2] Consequently, United cannot be said to have shared in the profits derived from Appellants' trafficking. Moreover, Appellants have not articulated a theory of how their traffickers may have been exposed to some specific risk by choosing to rent a room from United as opposed to any other hotel operator. Simply put, Appellants have failed to show how the room rentals establish a *common* undertaking between United and the traffickers. Room rentals are "arms-length" commercial "transactions[s]": the hotel rents rooms in exchange for the guest's payment. *Doe 1 v. Apple Inc.*, 96 F.4th 403, 415 (D.C. Cir. 2024).

In *Doe 1 v. Apple Inc.*, the D.C. Circuit Court of Appeals rejected a similar venture theory, holding that technology companies did not participate in a venture with their cobalt suppliers. *Id.* at 416. The Circuit Court explained that the parties were "on opposite sides of an arms-length transaction" — the suppliers "sell cobalt" while the companies "buy cobalt." *Id.* at 415. The companies did not "own [an]

---

[2] "Profit" is defined as "the excess of returns over expenditure in a transaction or series of transactions." *Profit*, MERRIAM-WEBSTER.COM DICTIONARY, https://www.merriam-webster.com/dictionary/profit (last updated August 20, 2025).

interest in their suppliers" or "share in [their] profits and risks." *Id.* The transaction, standing alone, did not provide a "factual basis to infer a common purpose," meaning that the plaintiffs failed to establish a "shared enterprise" between the parties. *Id.* at 415-16. As in *Doe 1*, Appellants cannot establish that United participated in a venture with their sex traffickers because there was no common undertaking or purpose between the sex traffickers and United. The sex traffickers simply engaged United in an arms-length transaction to rent hotel rooms. The district court correctly concluded that such an arms-length transaction does not establish a common venture and this decision should remain undisturbed on appeal.

> D.    *The district court properly viewed the facts in the light most favorable to Appellants when deciding the motion for summary judgment.*

The district court's order demonstrates that it applied the proper legal standard when considering United's motion for summary judgment. Indeed, the court recited the standard in its order. (G.W. Doc. 148 at 5-6; A.G. Doc. 151).

Nevertheless, Appellants argue that the district court failed to make all required inferences in their favor. In support of their proposition that the district court should have inferred that United had a common undertaking with Appellants' sex traffickers, Appellants point to United's purported failure to post a required anti-trafficking notice, that the Property was in a high-crime area, that United failed to get more security upon recommendation by law enforcement, and that United did not background check its staff, keep records of its staff, or identify all its staff in

discovery. However, what Appellants actually take issue with is the district court's refusal to deny summary judgment based on speculation and conjecture, which is something a court cannot do. *See Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) ("Speculation does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." (emphasis in original)). While "[a]n inference is not unreasonable simply because it is based in part on conjecture, . . . a jury will not be allowed to engage in a degree of speculation and conjecture that renders its finding a guess or mere possibility." *See Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1326 (11th Cir. 1982). "Such an inference is infirm because it is not based on the evidence." *Id.*

Here, the district court applied the correct standard, and it properly rejected Appellants' argument that those facts supported the inference that United was engaged in a common undertaking with the sex traffickers because to do so would constitute rank conjecture. It is not the district court's duty to bridge the gaps left behind by Appellants' failure to produce evidence in support of their claims.

> E.    *The district court properly denied reconsideration of its order granting summary judgment based on Appellants' request – raised for the first time in a reply brief – that the court should have drawn the adverse inference as a sanction at summary judgment.*

Appellants did not raise their argument that the district court should have drawn an adverse inference against United based on its discovery abuses until their reply brief to their motions for reconsideration. Courts in this Circuit recognize that

23

an argument raised for the first time in a reply brief is not properly before the court. *See Raheem v. GDCP Warden*, 995 F.3d 895, 919 n.6 (11th Cir. 2021) ("[A]rguments raised for the first time in a reply brief are not properly before a reviewing court."(quotation omitted)). The district court therefore properly denied Appellants' motion for reconsideration on this basis alone.

Furthermore, even if this issue was properly brought before the district court, this Court is precluded from considering it under the invited-error doctrine. This Court is "precluded 'from reviewing an issue raised on appeal if it has been *waived* through the doctrine of invited error.'" *Harris v. Sec'y, U.S. Dep't of the Interior*, No. 21-14117, 2022 WL 13711597, at *2 (11th Cir. Oct. 24, 2022) (quoting *United States v. Brannan*, 562 F.3d 1300, 1306 (11th Cir. 2009) (emphasis added)). "'The doctrine of invited error is implicated when a party induces or invites the district court into making an error.'" *Harris*, 2022 WL 13711597, at *2.

Even after United moved for summary judgment, Appellants' requested sanctions included attorneys' fees and "the preclusion of certain evidence or argument *at trial*[.]" (G.W. Doc. 130 at 10 (emphasis added); A.G. Doc. 132). A party cannot benefit from introducing an error in the trial court with the intent to create grounds for reversal on appeal. *See United States v. Stone*, 139 F.3d 822, 838 (11th Cir. 1998); *see also Brannan*, 562 F.3d at 1306 ("The doctrine stems from the common sense view that where a party invites the trial court to commit error, he

24

cannot later cry foul on appeal."). Appellants were aware of United's motion for summary judgment at the time their sanctions motions were pending and requested an adverse inference at trial only. This Court is precluded from considering Appellants' argument that the district court erred by not applying an adverse inference at summary judgment because they waived that issue through invited error.

Finally, Appellants have failed to demonstrate that the district court abused its discretion in refusing to impose the evidentiary sanctions they requested. "The decision of what sanction is appropriate . . . is committed to the district court's discretion." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1372 (11th Cir. 1997); *see also* Fed. R. Civ. P. 26(g) advisory committee's note to 1983 amendment ("The nature of the sanction is a matter of judicial discretion to be exercised in light of the particular circumstances"). In any event, even if the requested instruction had been applied at the summary judgment stage, it would not have demanded denial of United's motion for summary judgment. This is simply another example of Appellants attempting to disguise a dramatic analytical leap as an evidentiary inference. The district court's refusal to impose the requested sanctions or apply any adverse inference at the summary judgment stage should remain undisturbed.

## II. **The District Court Properly Dismissed Appellants' Negligence Claims After Finding that A.G. and G.W. Were Only Licensees at United Inn.**

Under Georgia law, "[i]t is well established that to recover for injuries caused by another's negligence, a plaintiff must show four elements: a duty, a breach of that

25

duty, causation and damages." *Ware v. Jackson*, 357 Ga. App. 470, 476 (2020). In Georgia, the duty of an owner/occupier or proprietor to invitees on its premises is established by O.C.G.A. § 51-3-1, which provides:

> Where an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe.

O.C.G.A. § 51-3-1. In contrast, a landowner is liable to a licensee only for "a willful or wanton injury." O.C.G.A. §§ 51-3-2(b), 51-3-3(b).

To be considered an invitee, a person must be induced, "by express or implied invitation," to come on the subject premises "for any *lawful* purpose." O.C.G.A. § 51-3-1 (emphasis added). "The 'accepted test' for invitee status in Georgia is whether the purported invitee's presence is of 'mutual benefit' to the purported invitee and the landowner." *Tobar v. United States*, 696 F. Supp. 2d 1373, 1378 (S.D. Ga. 2009). In contrast, a licensee "is one whose visit is 'merely for [her] own interests, convenience, or gratification.'" *Freeman v. Eicholz*, 308 Ga. App. 18, 21 (2011), citing O.C.G.A. § 51-3-2(a)(3); *Behforouz v. Vakil*, 281 Ga. App. 603, 603-604 (2006)). In other words, the determination is based on:

> whether the injured person *at the time of the injury* had *present business relations with the owner of the premises* which would render [her] presence of mutual aid to both, or whether [her] presence on the premises was for [her] own convenience, *or on business with others than the owner of the premises*. In the absence of some relation which

26

> inures to the benefit of the two, or to that of the owner, no invitation may be implied, and the injured person must be regarded as a licensee.

*Higginbotham v. Winborn*, 135 Ga. App. 753, 755 (1975) (emphasis added).

Here, Appellants were not on the Property "for any lawful purpose." Appellants were on the property to engage in commercial sex acts in violation of Georgia law. *See* O.C.G.A. §§ 16-6-9 and 16-5-46. Whether Appellants were allegedly sex trafficking victims does not change whether United owed them any duty under the statute. Furthermore, if Appellants were only on the Property by the control of their traffickers, they cannot have been "induced or led" to the Property by United. Most importantly, Appellants' presence on the property, whether by the coercion or invitation of their traffickers, benefitted the traffickers; it provided no benefit to United.[3] Accordingly, Appellants were not invitees and not entitled the duty of care owed to invitees. *See Higginbotham*, 135 Ga. App. at 755*; Jones v. Asa G. Candler, Inc*., 22 Ga. App. 717, 717 (1918) (holding that a plaintiff who visited a doctor's office not to receive services but for her own purpose could not claim invitee status).

Even if purchases at the Property's lobby convenience store granted Appellants invitee status, that invitation would only extend to the lobby. As soon as

---

[3] A person invited onto the premises of another for the benefit of the invitee "does not become an invitee of the owner of the premises," but is instead "no more than a social guest and is a licensee" of the owner. *Higginbotham*, 135 Ga. App. at 755.

Appellants returned to a guest room, they would have exceeded the scope of the invitation and become licensees at best. *See Armstrong v. Sundance Entm't*, 179 Ga. App. 635, 636 (1986) ("If an invitee does not go beyond that part of the premises to which, as it reasonably appears to him the invitation extends, he does not become a licensee. If, however, he does go beyond that part to which he is invited, he becomes a mere licensee."). More importantly, Appellants' injuries did not occur in the lobby or in relationship to convenience store purchases; instead, they occurred in the guest rooms, where they were mere licensees. Because their status is determined at the time of their injuries, Appellants' argument that even if they were not invitees when they arrived on the property, their status changed when they were in the lobby convenience store is without merit.

Finally, by raising it for the first time on reconsideration, Appellants have waived their argument that even if they were licensees, United still owed them a duty of care. As the district court noted, "a reconsideration motion may not be used to offer new legal theories or evidence that could have been presented in conjunction with the previously filed motion or response, unless a reason is given for failing to raise the issue at an earlier stage in the litigation." *Adler v. Wallace Computer Servs., Inc.*, 202 F.R.D. 666, 675 (N.D. Ga. 2001). Because Appellants gave no reason for their failure to timely raise the argument, the district court properly refused to

28

consider it. *See Sanderlin v. Seminole Tribe of Florida*, 243 F.3d 1282, 1292 (11th Cir. 2001).

Because Appellants produced no evidence that they were invitees *at the time of their injuries*, the only duty United owed to them at that time was to not cause willful or wanton injury. Appellants never argued below that United caused them willful and wanton injury. Accordingly, the district court properly dismissed Appellants' negligence claims.

Furthermore, even if Appellants could establish that they were invitees at the Property, they could not have established that United had superior knowledge of the risk that their traffickers would cause them to perform commercial sex acts at the Property. A proprietor is not the insurer of the safety of its invitees; rather, it is merely bound to exercise ordinary care to protect its invitees from unreasonable risks of which it has superior knowledge. *See Robinson v. Kroger Co.*, 268 Ga. 735, 740 (1997); *see also*, *Travis v. QuikTrip Corp.*, 339 Ga. App. 551, 553 (2016) ("'[T]he fundamental basis for an owner or occupier's liability is that party's superior knowledge of the hazard encountered by the plaintiff.'"). While the district court did not determine whether Appellants had superior knowledge of the risk, this Court can affirm on any basis supported by the record and should affirm the dismissal of Appellants' negligence claims. *See Fla. Wildlife Fed'n Inc. v. U.S. Army Corps of Eng'rs*, 859 F.3d 1306, 1316 (11th Cir. 2017) ("We may affirm the district court's

29

ruling on any basis the record supports . . . regardless of the grounds addressed, adopted[,] or rejected by the district court." (quotation marks and citation omitted)).

Generally, an intervening criminal act by a third party insulates a proprietor from liability unless such criminal act was reasonably foreseeable. *See Lau's Corp. v. Haskins*, 261 Ga. 491, 492 (1991). "'But even if an intervening criminal act may have been reasonably foreseeable, the true ground of liability is the superior knowledge of the proprietor of the existence of a condition that may subject the invitee to an unreasonable risk of harm.'" *Ratliff v. McDonald*, 326 Ga. App. 306, 313 (2014); *see Howell v. Three Rivers Security*, 216 Ga. App. 890, 892 (1995) ("The rule remains that the true ground of liability is the superior knowledge of the proprietor of the existence of a condition that may subject the invitee to an unreasonable risk of harm." (punctuation omitted)). When a plaintiff has equal or superior knowledge of a hazard or dangerous condition on an owner or occupier's premises, a plaintiff is not entitled to recovery if she fails to exercise reasonable care to avoid the hazard or dangerous condition. *See Rice v. Six Flags over Ga.*, 257 Ga. App. 864, 868 (2002).

In *Rice v. Six Flags Over Georgia*, the Georgia Court of Appeals held that a sexual assault victim had superior knowledge of the hazard and dangerous condition posed by another Six Flags patron. *See id.* at 868. While Rice, a minor, was in line to ride a roller coaster, an adult man in line behind her pulled her by the arm and told

her that they were going to ride together. *See id.* at 865. Rice declined an offer from another park guest in front of her to let her out of the line, despite admitting that she was fearful at the time. *See id.* While on the roller coaster, Rice was sexually assaulted and subsequently sued Six Flags under a theory of premises liability. *See id.* In affirming the trial court's summary judgment ruling, the Georgia Court of Appeals held that the plaintiff's "knowledge of the potential for violence on board [the roller coaster] *was equal to or superior to that of the appellees in that [Rice], though fearful, chose not to alert Park authorities of the concern she felt.*" *Id.* at 868 (emphasis added).

Here, Appellants clearly had superior knowledge of the risk that their traffickers would cause them to perform commercial sex acts at the Property. Before they ever stepped foot on the Property, Appellants knew that their traffickers were taking them there to perform commercial sex acts. By the time the Appellants arrived at the Property for the first time, they knew of their traffickers' propensities and intent. In contrast, there is no evidence that United had any knowledge of the trafficker's intentions. Furthermore, despite interacting with them, Appellants never informed any of United's staff that they were being trafficked for sex at the Property. Therefore, Appellants had superior knowledge of the risk that they would be trafficked at the Property on each and every occasion that it occurred. As a result, even if Appellants could have established that United owed them a duty of

31

reasonable care to protect them from foreseeable hazards at the Property — which they could not — Appellants had superior knowledge of the threat of harm posed by their traffickers at the Property. Consequently, Appellants failed to produce evidence of an essential element of their negligence claims, and the trial court properly granted United summary judgment on those claims.

## CONCLUSION

For the foregoing reasons, this Court should affirm.

Respectfully submitted, this 27th day of August, 2025.

**LEWIS BRISBOIS BISGAARD & SMITH LLP**

*/s/ Cameron A. Mobley*
CAMERON A. MOBLEY
Georgia Bar No. 613048
ALICE C. WARD
Illinois Bar No. 6333523

600 Peachtree Street NE
Suite 4700
Atlanta, Georgia  30308
Telephone:  (404) 348-8585
Facsimile:  (404) 467-8845
Cameron.Mobley@lewisbrisbois.com
Alice.Ward@lewisbrisbois.com

*Counsel for Appellee*
*Northbrook Industries, Inc.*

32

## **CERTIFICATE OF COMPLIANCE**

I certify that this Brief complies with the type-volume limitations set forth in Fed. R. App. P. 32(a)(7)(B) because, according to Appellee's word processing system's word count, this Brief contains 7,474 words, excluding the cover page, Certificate of Interested Persons, Statement Regarding Oral Argument, Table of Contents, Table of Authorities, Statement of Jurisdiction, and counsel's certifications as authorized by Fed. R. App. P. 32(a)(7)(B).

This Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this Brief has been prepared in a proportionately spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman font.

*/s/ Cameron A. Mobley*
CAMERON A. MOBLEY
Georgia Bar No. 613048

## CERTIFICATE OF SERVICE

This is to certify that, on August 27, 2025, I filed the foregoing **Brief of Appellee** with the Clerk of the Court using the CM/ECF system which will automatically send notification of such filing to counsel for Appellant.

**LEWIS BRISBOIS BISGAARD & SMITH LLP**

*/s/ Cameron A. Mobley*
CAMERON A. MOBLEY

600 Peachtree Street NE
Suite 4700
Atlanta, Georgia  30308
Telephone:  (404) 348-8585
Facsimile:  (404) 467-8845
Cameron.Mobley@lewisbrisbois.com
Alice.Ward@lewisbrisbois.com

Georgia Bar No. 613048
ALICE C. WARD
Illinois Bar No. 6333523

*Counsel for Appellee*
*Northbrook Industries, Inc.*